U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 2 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| CHESTER MARVIN PORTS AND DOROTHY D. PORTS | CIVIL ACTION NO. 03-1453 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CIRCLE K STORES, INC. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

This matter is before the Court on Defendant Circle K Stores, Inc.'s ("Circle K") Motion for Summary Judgment (Doc. 15). Circle K moved for summary judgment on Plaintiffs Chester Marvin Ports and Dorothy D. Ports (hereinafter sometimes collectively referred to as "Plaintiffs") claims that they are entitled to damages resulting from Mr. Ports' June 27, 2002 fall on the premises of a Circle K store located in Shreveport, Louisiana. After reviewing the entire record, the Court finds that there are no genuine issues of material fact in dispute, and that summary judgment in favor of Circle K is proper as a matter of law.

### I. PROCEDURAL BACKGROUND.

On August 4, 2003, Plaintiffs Chester Marvin Ports and Dorothy D. Ports filed a complaint (Doc. 1) in the First Judicial District Court, Caddo Parish, Docket Number 476,446-B, against Circle K arising out of Mr. Ports' fall on June 27, 2002 on the premises of the Circle K store located at 761 Pierremont Road in Shreveport, Louisiana. Also on August 4, 2003, Defendant Circle K answered (Doc. 3), denying liability, and filed a notice of removal (Doc. 4). The matter was removed on August 7, 2003 (Doc. 7) and is now

before this Court. On August 18, 2004, Defendant Circle K filed the instant motion for summary judgment (Doc. 15) on the basis that Mr. Ports' fall was not caused by the fault and/or negligence of Circle K. Plaintiffs opposed the motion for summary judgment (Doc. 21) maintaining that the "non-uniform" curb, which allegedly caused Mr. Ports' June 27, 2002 fall, located on the Circle K premises contains a defect and poses an unreasonable risk of harm.

## II. FACTUAL BACKGROUND.

On June 27, 2002, Mr. Ports was a patron at the Circle K convenience store, where he planned to refuel his vehicle, located at 761 Pierremont Avenue in Shreveport, Louisiana. See Doc. 1, ¶ 4. He parked his car next to the gasoline pumps located in the parking lot of the Circle K convenience store[1] and then began fueling his vehicle. See Defendant's Ex. A, Deposition of Chester Marvin Ports, at 19-23. After he finished pumping the gas, Mr. Ports walked across the parking lot towards the entrance of the Circle K so that he could pay for his fuel purchase. See id. at 25; Doc. 1, ¶ 4. As Mr. Ports approached the curb separating the parking lot and the sidewalk running parallel to the front of the Circle K convenience store, he noticed both the curb and the fact that it was not a "smooth transition" from the parking lot to the sidewalk. See Defendant's Ex. A at 26, lines 20-25. As Mr. Ports stepped onto the curb, he "got off balance and fell back," allegedly due to the uneven transition. Id. at 26, lines 23-25.

Mr. Ports fell around 10:00 a.m. See id. at 14, line 15. At the time of the accident,

---

[1]For purposes of this memorandum ruling, Circle K convenience store or convenience store refers to the Circle K convenience store located at 761 Pierremont Avenue in Shreveport, Louisiana.

the sun was out and the weather was "very good." Id. at 15, lines 2-9. As shown in the photograph of the accident scene, the vertical face of the sidewalk was painted dark brown or black and the surface of the parking lot was concrete gray. See Defendant's Ex. C, Photograph of Accident Scene. The curb in question was also edged with a metal "bull nose" strip. See id.; see also Doc. 21 at 1. Mr. Ports has stated that this metal edging "helped throw" him off balance and "helped trip" him. Defendant's Ex. A at 67, lines 2-10.

The differential in elevation between the parking lot and the sidewalk ranges from six inches on the north end to twelve inches on the south end. See Doc. 15, ¶ 7; see also Defendant's Ex. C. The differential in elevation between the parking lot and the sidewalk at the location of the accident, i.e., Mr. Ports' fall, is somewhere between seven and nine inches. See Defendant's Ex. B, Affidavit of Charles Stewart Slack.[2]

Plaintiffs allege that Mr. Ports' fall and the resulting damages were caused by the fault and negligence of Circle K. See Doc. 1, ¶ 7. Specifically, Plaintiffs allege that Circle K failed to provide an additional step to negotiate the incline; failed to provide a guardrail or handrail to assist in negotiating the incline; and failed to clearly mark the incline as a hazard. See id. Conversely, Circle K contends that the fall was the result of Mr. Ports'

---

[2]Circle K submits that the change in elevation between the parking lot and the sidewalk at the approximate location of Mr. Ports' fall is seven inches. See Defendant's Ex. B, ¶ 5. Yet, Circle K acknowledges that a City of Shreveport EMS report references the same differential in elevation as eight inches and that John Bowman, the Plaintiffs' expert, testified that the elevation differential in question is nine inches. See id. For purposes of the motion for summary judgment, Circle K and its expert, Charles Stewart Slack, submit that their arguments and conclusions "would be the same regardless of whether the differential in elevation is seven inches, eight inches, or nine inches." Id. Thus, the Court's analysis in this memorandum ruling assumes that the difference in elevation between the parking lot and the sidewalk at the location of Mr. Ports' fall is somewhere between seven and nine inches.

negligence, as he failed to pay attention to where he was walking; failed to see the curb which was in plain view; failed to take precautions to avoid tripping on the curb; and failed to recognize the elevation of the ground upon which he was walking. See Doc. 3, ¶ 15.

According to Plaintiffs, Mr. Ports sustained a fractured left ankle, a fractured left shoulder, and a gross hematuria as a result of the fall. See Doc. 1, ¶ 9. Specifically, Plaintiffs stated that Mr. Ports' medical bills related to this accident exceed $230,000.00. See Doc. 21 at 11. Plaintiffs further allege that Mr. Ports' June 27, 2002 fall greatly impacted the marital relationship between the Plaintiffs and that Mrs. Ports has suffered, and continues to suffer, a loss of consortium, services and society as a result of Mr. Ports' fall. See Doc. 1, ¶ 11.

## III. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P.56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. See Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the

nonmovant's response. See Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 325. To that end, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. See Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. See Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348 (1986). With these principles in mind, the Court now turns to a review of the claims at issue.

### B. Premises Liability.

Louisiana Civil Code Articles 2317 and 2317.1 are applicable to this case. Article 2317 states:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Thus, in order to recover, Plaintiffs must establish that (1) Circle K had custody of the curb; (2) the curb contained a defect, i.e., a condition creating an unreasonable risk of harm; (3) the defective condition caused Plaintiffs' injuries; (4) actual or constructive knowledge of the defect by Circle K; and (5) the damage could not have been prevented by the exercise of reasonable care. See La. C.C. Art. 2317.1; Yocum v. Gleason, 34,839 (La.App. 2 Cir. 6/20/01), 792 So.2d 808, 811.

Circle K's motion for summary judgment focuses on the second element referenced above - whether the curb contained a defect, that is, a condition creating an unreasonable risk of harm. See Doc. 21, Memorandum In Support Of Motion For Summary Judgment, at 3. Thus, for purposes of this memorandum ruling, the Court finds that Circle K had custody of the curb in question and proceeds to the determination of whether the curb contained a defect.

### 1. Defect - A Condition Creating An Unreasonable Risk Of Harm.

For a defect to create an unreasonable risk of harm, "the defect must be of such a nature as to constitute a dangerous condition which would reasonable be expected to cause injury to a prudent person using ordinary care under the circumstances." Durmon v. Billings, 38,514-CA (La.App. 2 Cir. 5/12/04), 873 So.2d 872, 876. Applying Louisiana law, courts have generally held that the simple fact that an accident occurred as a result

of an alleged defect does not in and of itself "elevate the condition of the thing to that of an unreasonably dangerous condition." Id. at 877. Courts must consider not only the past accident history of the defect in question, but also "the degree to which a danger may be observed by a potential victim." Id. If the "risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable." Id. Further, the unreasonable risk of harm criterion cannot be applied mechanically. See Limberg v. Winn Dixie Louisiana, Inc., 622 So.2d 1178, 1179 (La.App. 4 Cir. 1993). Rather, the court "must balance the claims and interests, weigh the risks and the gravity of harm, and consider the individual and societal rights and obligations. The court must balance the probability and magnitude of the risk against the utility of the thing." Id.

As to cases involving parking lots, sidewalks and curbs, the Louisiana Supreme Court has reasoned:

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm.

Reed v. Wal-Mart Stores, Inc., 97-C-1174 (La. 3/4/98), 708 So.2d 362, 363; see also Tipton v. Bossier Parish School Board, 441 So.2d 453, 455 (La.App. 2 Cir. 1983) (stating that "although sidewalks and curbs must be kept reasonably safe, expecting them to be maintained in perfect condition is unrealistic").

In Limberg, 622 So.2d 1178, the court applied the principles set forth above and held that a curb did not present a defect creating an unreasonable risk of harm where the plaintiff "simply failed to see what she should have seen." Id. at 1180. Similarly, in

Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4 Cir. 1989), where the sidewalk and the driveway were one light cement material and the parking lot was a darker asphalt, the court found there was no defect creating an unreasonable risk of harm. See id. at 231. The Williams court reasoned that even though the sidewalk where the plaintiff was injured was not perfect, the risk of harm would have been obvious to a person exercising ordinary care and prudence under the circumstances. See id. at 231.

In Walker v. James W. Salley, Inc., 412 So.2d 159 (La.App. 3 Cir. 1982), a case with facts very similar to those in the instant matter, the plaintiff testified:

> As I walked off the end of the store, out at the end, I stepped down. And then, there's . . . this little curb there that I started to step over, and my foot was, got caught on that curb and it, and I fell.

Id. at 160. The plaintiff also recalled that she was well aware of the existence of the curb. See id. The trial court held that because the plaintiff was wholly aware of the curb, and in fact saw the curb and attempted to step over it, the curb did not present an unreasonable risk of harm. See id. The appellate court affirmed on the grounds that the curb was easily discernable to anyone traversing the area; the plaintiff was well aware of the existence of the curb; and the plaintiff saw the curb on the day in question, attempted to traverse it, misjudged her step or footing and tripped. See id. at 161; see also Barnes v. New Hampshire Insurance Company, 573 So.2d 628, 630-31 (La.App. 2 Cir. 1991) (reasoning that where the difference in elevation between two completely different surfaces is readily visible to an attentive person exercising due care for her own safety, the only factor leading to the plaintiff's injury was her failure to watch where she was walking).

In Trice v. Isaac, 99-CA-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843, the alleged defect was an elevated walkway and a parking lot. While the walkway was made of the

same material as the parking area, the court noted that photographs of the accident scene evidenced a clearly visible step up. See id. at 847. Because the elevation change was apparent, the court held that no special warning was required and that the parking lot and walkway did not create an unreasonable risk of harm. See id. at 847-48.

D.    **Application Of Premises Liability Law To The Instant Case.**

Plaintiffs contend that the curb at issue in this case constituted a defect and presented an unreasonable risk of harm for multiple reasons, including: (1) the change in elevation between the parking lot and the sidewalk was not uniform/standard; (2) there were no warning signs or handrails/guardrails at the curb; (3) the vertical face of the curb was not painted red or yellow to provide a warning to pedestrians; and (4) the bull nose metal edging constituted a tripping hazard. See generally Doc. 21.[3] Plaintiffs argue that Mr. Ports could not have been expected to constantly look down while he was walking and that he was not required to constantly observe the surface of the walk or "to exercise the care that would be necessary in traversing a jungle." See Bessard v. State of Louisiana, 94-C-0589 (La. 11/30/94), 645 So.2d 1134 and White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (1949), respectively. Plaintiffs also argue that because there was

---

[3]Plaintiffs also note in their opposition brief that Circle K failed to acknowledge environmental conditions "which were likely at the time of the fall." See Doc. 21 at 8. Specifically, Plaintiffs reference bright sunlight, pedestrians, and "other conditions which would both limit victim fault and underscore the need for the business owner to have exercised a greater effort to provide for pedestrian safety." Id.
  The Court declines to defeat Circle K's motion for summary judgment on the basis of such speculative environmental conditions. Plaintiffs allege that the environmental conditions may have contributed to Mr. Ports' fall, yet they have failed to present any competent summary judgment evidence as to the *actual* presence of such conditions, how the alleged conditions caused or contributed to Mr. Ports' fall, and/or the theory under which the presence of such conditions establishes liability on the part of Circle K.

nothing present at the scene of the accident to specifically call Mr. Port's attention to his feet, there was no reason for him to be on high alert. See Doc. 21 at 9.

Conversely, Circle K argues that regardless of the alleged "non-uniform" curb; the lack of warning signs, handrails/guardrails, and yellow or red paint; and the presence of the bull nose edging, "the most significant undisputed fact is that . . . Mr. Ports was aware prior to the accident that there was a difference in elevation between the surface of the parking lot and the surface of the sidewalk that runs parallel to the front of the Circle K store." Doc. 15, Memorandum In Support Of Motion For Summary Judgment, at 1. The Court agrees.

Plaintiffs do not contend that the alleged defect, i.e., the change in elevation from the parking lot to the sidewalk, was hidden from Mr. Ports. In fact, it is undisputed that Mr. Ports not only knew of the curb's existence, but also noticed that the transition from the parking lot to the sidewalk was not "smooth." See Defendant's Ex. A at 26, lines 20-25; see also Doc. 21 at 8. Specifically, Mr. Ports stated that as he approached the building and saw the curb, he "was thinking about properly and safely executing [the curb]." Defendant's Ex. A at 26, lines 10-11. Further, he testified that he "seemed to kind of catch [his] foot on the edge of the concrete" because "it wasn't a smooth transition to the higher level, and when that happened, that's when [he] got off balance and fell back." Id., lines 22-25.

As evidenced by the jurisprudence set forth in section III(B)(1) of this memorandum ruling, Circle K's duty to Mr. Ports was not to eliminate all variation in elevation existing along the curb, as such a requirement would be impossible. See Reed, 708 So.2d at 363. Rather, Circle K had a duty to protect against defects that posed an unreasonable risk of harm. See id. The instant case is not one of Mr. Ports failing to see what should have

been seen because, as the undisputed facts establish, he saw the curb and noted the change in elevation. See generally Defendant's Ex. A at 26. Clearly, based on the testimony of Mr. Ports, any risk of harm presented by the curb, regardless of whether the change in elevation was uniform,[4] was obvious. See id.

Both Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4 Cir. 1989), and Walker v. James W. Salley, Inc., 412 So.2d 159 (La.App. 3 Cir. 1982), provide guidance to the Court in this instance. In Williams, the court held that the curb at the end of the sidewalk did not present an unreasonable risk of harm because even though the sidewalk was not perfect, the risk of harm was obvious to a person exercising ordinary care and prudence under the circumstances. See Williams, 541 So.2d at 231. Likewise, the Walker court noted that there was no unreasonable risk of harm where the plaintiff admitted that she knew of the existence of the curb, started to step over the curb, her foot got caught on the curb, and then she fell. See Walker, 412 So.2d at 160-61. Simply put, the facts and circumstances of this case evidence a curb that does not contain a defect and does not present an unreasonable risk of harm, as Mr. Ports was not only wholly

---

[4]Circle K has also presented the affidavit of C. Stewart Slack ("Slack"), an architect, stating:

> The elevation of the sidewalk at the location of the accident is consistent with a normal stair riser dimension. It is not unreasonable for a pedestrian to expect a vertical transition of that height, and the vertical dimension at the accident location is consistent with the expectation of a stair riser by the applicable building and safety codes and in practice.

Defendant's Ex. B, ¶ 6. In providing this opinion, Slack relied on his professional experience, the photograph of the accident scene, a visit to the actual accident scene, and numerous materials, including the 1997 Standard Building Code, the Southern Building Code Congress International, Inc., Seventh Printing, and the Life Safety Code (NFPA) Handbook. See id., ¶¶ 3-5.

aware of the curb and the change in elevation, but also attempted to traverse the curb.[5]

Further, Plaintiffs' argument that the curb contained a defect presenting an unreasonable risk of harm due to the lack of warning signs and yellow and/or red paint fails. See Trice v. Isaac, 99-CA-839 (La.App. 5 Cir. 2/16/00), 759 So.2d 843. In Trice, the walkway was made of the same material as the parking lot. See id. at 847. Yet, the photographs of the accident scene clearly evidenced a visible step up. See id. The Trice court reasoned that because the change in elevation was apparent, no special warning was required. See id. at 847-48. Here, the photograph of the accident scene denotes an obvious change in elevation and, as stated earlier, Mr. Ports admitted that he saw the change in elevation. See Defendant's Ex. C; Defendant's Ex. A at 26. Further, the photograph of the accident scene also establishes that the vertical face of the sidewalk was painted dark brown or black and the surface of the parking lot was concrete gray; thus, there was a visible change in color.[6] See Defendant's Ex. C; see also Williams v. Orleans Parish School Board, 541 So.2d 228, 231 (La.App. 4 Cir. 1989) (reasoning that where the

---

[5]Plaintiffs seemingly argue that because the City of Shreveport has adopted standards relating to street curb design which range from four to six inches in height, the curb at issue in this case contains a defect and presents an unreasonable risk of harm in that the height of the transition at the accident scene was seven to nine inches. See Doc. 21 at 5. Yet, as noted by Circle K in its reply brief, Plaintiffs have not presented competent summary judgment evidence establishing that such standard is applicable to the instant case, as the curb at issue is a sidewalk curb, not a street curb. See Doc. 22. Thus, Plaintiffs' argument regarding the four to six inch standard curb design does not defeat Circle K's motion for summary judgment.

[6]Moreover, there is expert testimony in the record from Slack stating that contrasting colors are not required at sidewalk curbs. See Defendant's Ex. B, ¶ 8. He further attested that "red markings are requested by the Shreveport Fire Prevention and deal only with restrictions for fire fighting or emergency equipment. Red markings are not intended to identify level change or provide public safety warnings." See id.

sidewalk and the driveway were one light cement material and the parking lot was a darker asphalt, there was no defect creating an unreasonable risk of harm insomuch as the risk of harm would have been obvious to a person exercising ordinary care and prudence under the circumstances). The Court finds that, under these circumstances, no special warning, such as a warning sign and/or yellow or red paint was required to signal Mr. Ports as to the change in elevation.

Plaintiff further alleges that Circle K's failure to maintain handrails/guardrails at the accident scene caused the curb to present a defect creating an unreasonable risk of harm. Again, the Court places great emphasis on the fact that Mr. Ports saw the curb, noted the change in elevation, and attempted to traverse the curb; thus, the curb did not contain a defect presenting an unreasonable risk of harm. Notwithstanding, the Court notes the expert testimony in the record, apparently relying on the Life Safety Code, that "means of egress that are more than 30 inches above the floor or grade below shall be provided with guards to prevent falls over the open side." Plaintiffs' Ex. A, Deposition of John R. Bowman, at 62, lines 15-19; see also Defendant's Ex. B, ¶ 7. It is undisputed that the curb at issue was, at its highest point, twelve inches. See Doc. 15, Defendant's Statement of Undisputed Material Facts, ¶ 7; Doc. 21, ¶ 7. Specifically, at the approximate location of the accident, the curb was between seven and nine inches in height. See supra n. 2. Thus, the Life Safety Code's "guard" requirement is inapplicable to this case. Moreover, defense expert Slack stated that "if a single step or ramp is part of a curb that separates a sidewalk from vehicular traffic, it does not require a handrail." Defendant's Ex. B, ¶ 7.

Finally, Plaintiffs' maintain that the bull nose edging along the edge of the curb presented an unreasonable risk of harm insomuch as it "formed a separate tripping

Page 13 of 16

hazard." Doc. 21 at 8. Specifically referring to the bull nose edging, Mr. Ports stated that "it seemed to me that I kind of caught my toe in the edge of the – here (indicating) which helped throw me off balance and caused me to fall right on the edge of the of the concrete." Defendant's Ex. A at 67, lines 4-7. Moreover, Plaintiffs seem to contend that because the bull nose edging was "ornamental and not required for construction of the curb," it constituted a defect creating an unreasonable risk of harm.

The Court finds that Plaintiffs' contention that the bull nose edging constitutes a defect that created an unreasonable risk of harm fails for several reasons. In reaching this conclusion, the Court balanced the probability and magnitude of the risk against the utility of the thing. See Limberg v. Winn Dixie Louisiana, Inc., 622 So.2d 1178, 1179 (La.App. 4 Cir. 1993). Here, the record lacks information relating to the accident history of the curb and bull nose edging at issue in this case. See Durmon v. Billings, 873 So.2d at 877 (stating that Court must consider past accident history of the alleged defect in question). Namely, Plaintiffs have failed to document any similar accidents that had previously occurred on Circle K premises. Additionally, the summary judgment evidence, primarily the photograph of the accident scene, plainly reveals that the bull nose edging along the curb was easily observable by a potential victim such as Mr. Ports. See id. (reasoning that Court must judge "the degree to which a danger may be observed by a potential victim"); see also Defendant's Ex. C. Further, while the Court agrees with Plaintiffs that the bull nose edging is ornamental and was not required for the construction of the curb, there is nothing in the summary judgment record demonstrating that the bull nose edging was cracked or broken or in some way constituted a hidden danger that would not have been apparent to a potential victim such as Mr. Ports. While the "utility" of the bull nose edging

itself may not be evident, the "utility" of the elevated sidewalk is clearly drainage related, as poor drainage near the entrance of the convenience store could possibly pose an unreasonable risk of harm to patrons.

In the instant case, the victim was familiar with the area,[7] observed the change in elevation, and attempted to traverse the curb. See Limberg, 622 So.2d at 1179 (citation omitted) (stating that "the victim's familiarity with the area . . . [is a] factor[] which should be considered"). Further, the photograph of the accident scene reveals that the bull nose edging was apparent and the jurisprudence clearly holds that "a pedestrian has a duty to see that which should be seen." See id. (citation omitted). Accordingly, the Court finds that, under these circumstances, the bull nose edging did not constitute a defect presenting an unreasonable risk of harm to Mr. Ports.[8]

## VII. CONCLUSION.

The Court finds that Circle K's motion for summary judgment as to Plaintiffs' claims is proper as a matter of fact and law. The most substantial undisputed fact in the summary judgment record is that Mr. Ports was aware prior to his fall of the change in elevation

---

[7]In his deposition, Mr. Ports admitted that he had been a patron at this Circle K convenience store at least one time before. See Defendant's Ex. A at 16, lines 4-7.

[8]The Court has found that the curb in question did not contain a defect – the second requirement of Louisiana Civil Code Article 2317.1. Notwithstanding, even if the Court were to have found that the curb contained a defect, Plaintiffs' claims would have likely failed due to the third and fifth requirements of Article 2317.1. Satisfaction of the third requirement, that the defective condition caused Plaintiffs' injuries, is questionable due to the summary judgment evidence indicating that Mr. Ports's own negligence may have caused his fall. See Defendant's Ex. A at 26. Likewise, the same summary judgment evidence plausibly defeats the fifth requirement, that the damage could not have been prevented by the exercise of reasonable care, as Mr. Ports' deposition indicates that he likely lost his balance and fell because he misjudged the step. See id.

relating to the curb. Further, even if Mr. Ports did not actually see the bull nose edging along the edge of the curb, the photograph of the accident scene reveals that the presence of the bull nose edging should have been obvious to a pedestrian such as Mr. Ports.

Therefore:

**IT IS ORDERED** that Circle K Stores, Inc.'s Motion for Summary Judgment [Doc. 15] shall be **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Chester Marvin Ports' and Dorothy D. Ports' claims are **DISMISSED WITH PREJUDICE**.

Shreveport, Louisiana, July 22, 2005.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE